```
                    UNITED STATES BANKRUPTCY COURT
                     EASTERN DISTRICT OF LOUISIANA


IN THE MATTER OF
                                        CASE NO. 87-12112 SEC. A
MICKEY O'CONNOR
                                        CHAPTER 11
     Debtor
------------------------------------------------------------------

MICKEY O'CONNOR and FRANK
W. MCGEE, TRUSTEE

     Plaintiffs

          Vs.                           ADV. NO. 05-1120

WESTBANK INNS, a Louisiana
Partnership, JOHN F. STUMPF,
JR., LINCOLN T. CASE, and HARRY
C. STUMPF

     Defendants
------------------------------------------------------------------
                       REASONS FOR DECISION
------------------------------------------------------------------
```

Three motions are presently before the Court: (1) the **JOINT MOTION AND INCORPORATED MEMORANDUM FOR CONSOLIDATION OF PENDING ADVERSARY PROCEEDINGS AGAINST WESTBANK INNS, JOHN F. STUMPF, JR., LINCOLN T. CASE AND HARRY C. STUMPF** filed by Frank W. McGee, Westbank Inns, and Harry C. Stumpf, (2) the **MOTION FOR LEAVE TO INTERVENE AS PLAINTIFF** filed by Frank W. McGee, and (3) the **MOTION FOR REMAND AND STATEMENT OF NON-CORE PROCEEDINGS** filed by Mickey O'Connor. A hearing was held on these motions on June 30, 2005, after which the court took the matters under advisement.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

In 1982, Mickey O'Connor, Ronald Case, Auby Smith, and John Stumpf formed Westbank Inns, a Louisiana general partnership.

Later in 1982, Westbank Inns entered into a joint venture with LaQuinta Motor Inns. Westbank Inns owns a 40% interest in the joint venture. The joint venture owns and operates a LaQuinta Inn in Gretna, Louisiana.

On May 14, 1987, Mr. O'Connor ("Debtor") filed a petition for relief under Chapter 11 of the U.S. Bankruptcy Code. Mr. O'Connor was debtor-in-possession until Frank McGee was appointed chapter 11 trustee on April 18, 1991.

On May 13, 1994, the bankruptcy court confirmed the debtor's Second Amended Plan of Reorganization ("Plan"). The Plan established a liquidating trust, into which all of the Debtor's assets were transferred, with Mr. McGee ("Trustee") continuing as trustee of the trust. Creditors of the estate were named as the trust beneficiaries.

In 1995, the Trustee filed adversary proceeding 95-1025 ("the 1995 Adversary") against John F. Stumpf, Jr., Harry C. Stumpf, and Lincoln T. Case. The trustee sought judgment declaring the following:

> (1) that the partnership interests of Ronald D. Case and Auby D. Smith in Westbank Inns terminated by operation of law on April 26, 1989 and March 26, 1990, respectively;
>
> (2) that any purported transfer to John F. Stumpf, Jr., Lincoln T. Case, and/or Harry C. Stumpf of the partnership interests formely owned

by Case or Smith are null, void and of no effect as against the Chapter 11 estate of Mickey O'Connor under Article 13 of the Westbank Inns Articles of Partnership;

(3) that any purported transfers to John F. Stumpf, Jr., Lincoln T. Case, and/or Harry T. Stumpf of the partnership interests formerly owned by Case or Smith conveyed only the right to receive, in money, the value of said partnership interests as of their dates of termination;

(4) determining the value, in money, of the terminated partnership interests of Case and Smith pursuant to Louisiana Civil Code Article 2825;

(5) that any purported transfer by John F. Stumpf, Jr. to Harry C. Stumpf of an 8.583% interest in Westbank Inns to be null, void and of no effect as against the Chapter 11 estate of Mickey O'Connor under Article 13 of the Westbank Inns Articles of Partnership;

(6) that the terminated partnership interests of Case and Smith passed proportionately by operation of law to the Chapter 11 estate of Mickey O'Connor and fixing the increased percentages of ownership of plaintiff in Westbank Inns; and

(7) ordering John F. Stumpf, Jr., Lincoln T. Case and Harry C. Stumpf to account to the Chapter 11 estate of Mickey O'Connor for any and all distributions received by defendants and which are, or were, attributable to the terminated interests of Case and Smith and which are, or were, attributable to any transfer of interest in Westbank Inns made in violation of Article 13.02 of the Articles of Partnership of Westbank Inns.

In a partial judgment dated May 6, 1998, this court held the following:

(1) The status of Ronald Case and Auby Smith as partners of Westbank Inns ("Westbank") was terminated on April 26, 1989 and March 26, 1990, respectively;

3

(2) All transfers of their partnership interests undertaken by Ronald Case, Auby Smith and John Stumpf are declared to be null and void;

(3) The Plaintiff herein, Trustee Frank McGee, is entitled to an accounting from the Defendants of all partnership distributions made to them on account of the voided transfers;

(4) The Debtor's interest in Westbank, and his status as a partner, passed through the bankruptcy, and it is still an asset of the reorganized Debtor;

(5) McGee is entitled to an accounting from the Defendants of all partnership distributions that should have been made to the Debtor's estate on account of his partnership interest; and

(6) The parties will set up an evidentiary hearing on the issue of valuation of the interests of former partners Ronald Case and Auby Smith.

On appeal, the United States District Court affirmed in part and reversed in part finding that: (1) the partnership agreement was non-assumable; (2) because the partnership agreement was neither assumed nor rejected, the partnership agreement passed through the bankruptcy; (3) the partnership was unaffected by the bankruptcy proceedings and remains binding on the Debtor; (4) the partnership is not part of the debtor's estate; and (5) only the debtor can claim a right to distributions and a right to determine the validity of transfers of interests of the partnership. Accordingly, the District Court dismissed the trustee's claims.

On further appeal, the Fifth Circuit held that the partnership agreement was not assumable under 11 U.S.C. §365(c)(1). <u>Stumpf v. McGee (In re O'Connor)</u>, 258 F.3d 392, 402 (5th Cir. 2001). The

Fifth Circuit also held that while Louisiana Civil Code Article 2812 allows a partner to share his interest with a third party without the consent of the other partners, he "*cannot confer partner status* upon the third party. *Unless* he is a partner such third party has no right to assert a claim against the remaining partners, or the partnership." 258 F.3d at 403. Also, under La. Civil Code Article 737, "the partnership would be an indispensable party in any action by the Trustee to recover the value of O'Connor's interest." 258 F.3d at 403. The Fifth Circuit also stated:

> . . . the district court correctly held that the partnership agreement did *not* pass through bankruptcy to the Reorganized Debtor. Instead, it passed through to the pre-bankruptcy Debtor, *unaffected* by the bankruptcy proceedings.

258 F.3d at 405. Accordingly, the Fifth Circuit affirmed the District Court's dismissal of the trustee's claims, and remanded the case to the District Court "with instructions to remand it to the bankruptcy court for such further proceedings, if any as may be appropriate, consistent with [its] opinion." 258 F.3d at 405. The bankruptcy court took no further action, and closed the case on January 28, 2003.

On August 2, 2002, the Trustee and the Debtor filed a complaint for declaratory Relief and for an accounting, adversary number 02-1147. The complaint prays for judgment in favor of the plaintiffs declaring the following:

5

(1) declaring that the partnership interests of Ronald D. Case and Auby D. Smith in Westbank Inns terminated by operations of law on April 26, 1989 and March 26, 1990, respectively;

(2) declaring that any purported transfers to John F. Stumpf, Jr., Lincoln T. Case and/or Harry C. Stumpf of the partnership interests formerly owned by Case or Smith are null, void, and of no effect as against Mickey O'Connor under Article 13 of the Westbank Inns Articles of Partnership;

(3) declaring that any purported transfers to John F. Stumpf, Jr., Lincoln T. Case and/or Harry C. Stumpf of the partnership interests formerly owned by Case or Smith conveyed only the right to receive, in money, the value of said partnership interests as of their dates of termination;

(4) determining the value, in money, of the terminated partnership interests of Case and Smith pursuant to Louisiana Civil Code Article 2825;

(5) declaring that any purported transfer by John F. Stumpf, Jr. to Harry C. Stumpf of an 8.583% interest in Westbank Inns to be null, void and of no effect as against Mickey O'Connor under Article 13 of the Westbank Inns Articles of Partnerhsip;

(6) declaring that the terminated partnership interests of Case and Smith passed proportionately [by] operation of law to Mickey O'Connor and fixing the increased percentage of ownership of plaintiff [in] Westbank Inns; and

(7) ordering Westbank Inns, John F. Stumpf, Jr., Lincoln T. Case and Harry C. Stumpf to account to the Chapter 11 estate of Mickey O'Connor and Mickey O'Connor for any and all distributions received by defendants and which are, or were, attributable to the terminated interests of Case and Smith and which are, or were, attributable to any transfers of interest in Westbank Inns made in violation of Article 13.02 of the Articles of Partnership of Westbank Inns.

The complaint also asked that "Westbank Inns pays to Complainants their proportionate share of all funds distributed to date."

The bankruptcy court ruled on February 25, 2003, in its opinion on the motions to dismiss adversary number 02-1147 filed by John Stumpf, Harry Stumpf and Lincoln Case, after granting a motion to reconsider its December 2002 ruling, that it lacked jurisdiction over Mr. O'Connor's claims against John Stumpf, Harry Stumpf and Lincoln Case because they will not affect the bankruptcy estate. In addition, the bankruptcy court ruled that it did have jurisdiction over Mr. McGee's claims as trustee of the estate. However, those claims were barred by *res judicata* because they were asserted in the 1995 adversary.

Also on February 25, 2003, the bankruptcy court ruled that it (a) did not have jurisdiction over Mr. O'Connor's claims against Westbank Inns, and (b) did have jurisdiction over Mr. McGee's claims against Westbank Inns. In addition, Counts 1 through 6 of Mr. McGee's prayer for relief were dismissed based on the Fifth Circuit's ruling in Stumpf v. McGee. Finally, the court held that Westbank Inns only had to account to Mr. McGee for distributions made prior to confirmation. On April 16, 2003, the bankruptcy court denied Westbank Inns' motion for partial rehearing.

On September 29, 2003, Mr. O'Connor filed suit against Westbank Inns, John F. Stumpf, Jr., Lincoln T. Case, and Harry

Stumpf in the 24th Judicial District Court, Parish of Jefferson.[1] In his complaint, Mr. O'Connor prays for an order (1) requiring Westbank Inns to remit to him all partnership distributions attributable to his initial 31-1/4% interest from May 13, 1994,[2] to the present; (2) declaring Mr. O'Connor to be the owner of an additional 18-3/4% interest in Westbank Inns representing his proportionate share of the interests of Ronald D. Case and Auby D. Smith; and (3) requiring defendants to give him all partnership distributions for the additional 18-3/4% interest from May 13, 1994 to the present.

The defendants filed an exception of no right of action which, on January 31, 2005, was overruled by the state court judge. Westbank Inns and Harry Stumpf filed an Application for Supervisory Writs in the Fifth Circuit Court of Appeals for the State of Louisiana regarding the overruling of their exception of no right of action. This application was denied on April 1, 2005.

On May 2, 2005, Westbank Inns, John Stumpf, Lincoln Case, and Harry Stumpf filed in the Louisiana Supreme Court an Application for Supervisory Writs regarding the appellate court's denial of the previous application for supervisory writs.

On February 7, 2005, Mr. O'Connor filed in the state court case a Petition for Sequestration of $1,784,387,000 of property of

---

[1] Case Number 599-376.

[2] The confirmation date.

Westbank Inns. The state court judge denied the Petition for Sequestration on the grounds that (1) it was a motion of a party rather than the court in violation of Louisiana Code of Civil Procedure article 3573; (2) opposing counsel was not served; and (3) there was no transcript in support provided and no alternative show cause orders attached as required if it is a motion under Louisiana Code of Civil Procedure article 3571.

Mr. McGee filed a motion to intervene as plaintiff in the state court proceeding.

On May 13, 2005, Harry Stumpf and Westbank Inns filed a Notice of Removal in the United States District Court for the Eastern District of Louisiana. The case was referred to this court and is now this adversary proceeding.

On June 2, 2005, Mr. McGee filed a motion to consolidate this adversary with adversary number 02-1147. On the same day, Mr. O'Connor filed a motion to remand the instant adversary to state court.

On June 16, 2005, John Stumpf joined in the removal of the case to federal court.

## II. DISCUSSION

Mr. O'Connor's motion to remand the instant case to state court is based upon the following grounds: (1) lack of jurisdiction of the bankruptcy court and its ruling in adversary number 02-1147 that it did not have jurisdiction over Mr. O'Connor's claims; (2)

9

Westbank Inns did not timely file its notice of removal within thirty days after receipt of the state court pleading setting forth the claim upon which the removal is based; (3) the notice of removal did not include a timely concurrence by the other defendants or any state court pleadings; (4) mandatory and permissive abstention.

As stated above, Mr. O'Connor seeks the following relief: (1) requirement that Westbank Inns remit to him all partnership distributions attributable to his initial 31-1/4% interest from May 13, 1994[3] to the present; (2) declaration that he be recognized as the owner of an additional 18-3/4% interest in Westbank Inns representing his proportionate share of the interests of Ronald D. Case and Auby D. Smith; and (3) requirement that the defendants pay to him all partnership distributions for the additional 18-3/4% interest from May 13, 1994 to the present.

Judge Brahney previously ruled in adversary number 02-1147 that the court does not have jurisdiction over Mr. O'Connor's post-confirmation claims against the defendants. In fact, Westbank Inns argued in that case that the court lacked jurisdiction over Mr. O'Connor's claims as the outcome would not affect the estate.

---

[3] The confirmation date.

Consequently, Westbank Inns is judicially estopped from now taking an inconsistent position[4].

Further guidance regarding the issue of this court's jurisdiction is obtained from the Fifth Court decision in Matter of Craig's Stores of Texas, 266 F.3d 388 (5th Cir. 2001), dealing specifically with the extent of post-confirmation jurisdiction of bankruptcy courts.

In Craig's Stores, the debtor's confirmed plan assumed a pre-petition contract with Bank of Louisiana. Pursuant to that contract, Bank of Louisiana administered the debtor's private label credit card program and purchased the debtor's receivables. A dispute arose post-confirmation resulting in Craig's Stores filing suit against Bank of Louisiana in the bankruptcy court. A substantial judgment was rendered in the debtor's favor by the bankruptcy court. On appeal to the district court, the judgment was vacated as the court dismissed the complaint for lack of jurisdiction.

The Fifth Circuit affirmed the district court's decision that the bankruptcy court lacked subject matter jurisdiction. The court chose to apply a narrower jurisdictional test in post-confirmation

---

[4] Judicial estoppel prevents parties from assuming inconsistent positions in order "to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." In re Superior Crewboats, Inc., 374 F.3d 330, 334 (5th Cir. 2004).

11

litigation than the broader "related to" jurisdictional inquiry found in 11 U.S.C. § 1334(b):

> Some circuits have utilized this ["related to"] theory . . . to assess jurisdiction after confirmation of a reorganization plan, but they have not applied in on post-confirmation facts like those before us. [Citations omitted.]
>
> The more persuasive theory of post-confirmation jurisdiction, however, attaches critical significance to the debtor's emergence from bankruptcy protection.  As the Seventh Circuit put it,
>
>> Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The firm also is without the protection of the bankruptcy court.  It may not come running to the bankruptcy judge every time something unpleasant happens.
>
> Pettibone Corp. v. Easley, 935 F.2d 120, 122 (7th Cir. 1991).  After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan. [Citations omitted.] No longer is expansive bankruptcy court jurisdiction required to facilitate "administration" of the debtor's estate, for there is no estate left to reorganize. This theory has antecedents in our court's jurisprudence, which has observed that the reorganization provisions of the former Bankruptcy Act "envisage[] that out of the proceedings will come a newly reorganized company capable of sailing forth in the cold, cruel business world with no longer the protective wraps of the federal Bankruptcy Court." In re Seminole Park & Fairgrounds, Inc., 502 F.2d 1011, 1014 (5th Cir. 1974). Because it comports more closely with the effect of a successful reorganization under the Bankruptcy Code than the expansive jurisdiction cases, we adopt this more exacting theory of post-confirmation bankruptcy jurisdiction.

266 F.3d at 390-391.  Having made the choice of the narrower test for post-confirmation jurisdiction, the court declared that "it is

clear that Craig's claim against the Bank principally dealt with post-confirmation relations between the parties", 266 F.3d at 391, citing the following factors:

- no antagonism or claim between the parties arose until post-confirmation;

- no special significance attached to the fact that the executory contract existed throughout the proceeding and was assumed in the plan;

- "no facts or law deriving" from the plan was necessary to the debtor's claim against the bank; and

- although the debtor claimed that the status of the contract with the bank would affect distribution to creditors under the plan, the same could be said of other post-confirmation contractual relations.

Based on those observations, the court thus concluded that "the state law causes of action . . . do not bear on the interpretation or execution of the debtor's plan and therefore do not fall within the bankruptcy court's post-confirmation jurisdiction. Id.

In the instant case, the Fifth Circuit has ruled that the partnership agreement passed through the bankruptcy to the pre-bankruptcy debtor, Mr. O'Connor, unaffected by the bankruptcy. 258 F.3d at 405. Now, Mr. O'Connor is merely seeking to recover the partnership distributions made post-confirmation. This court has

13

found, as the Fifth Circuit did, that "[n]either the Disclosure Statement nor the Plan made any specific reference to the [partnership] agreement." Id. at 401. Accordingly, Mr. O'Connor's claims against the defendants do not involve an interpretation of plan provisions.

While the court does not have enough information to determine whether the plan has been fully consummated, the court does not believe that the dispute between Mr. O'Connor and the defendants will affect either compliance with or completion of the plan. The parties have identified no outstanding obligations under the plan that underlie this dispute. The confirmed plan does not even mention the partnership agreement, nor do any plan provisions constitute any portion of Mr. O'Connor's allegations.

This litigation does not involve an interpretation of the terms and conditions of the confirmed plan. Mr. O'Connor is asking for post-confirmation distributions to which he contends he is entitled. Clearly, therefore, Louisiana partnership law, not bankruptcy law, will determine the outcome of this proceeding. Also, this court is unwilling to ignore Judge Brahney's clear ruling in adversary number 02-1147 that the court lacks jurisdiction over Mr. O'Connor's post-confirmation claims over these defendants.

### III. CONCLUSION

Based upon the above reasons, and in conformity with the decision of the Fifth Circuit in Craig's Stores, the court concludes that it lacks subject matter jurisdiction under 28 U.S.C. § 1334 to hear and decide this case. Accordingly, the motion to remand is to be granted.

Because this proceeding will be remanded to state court, the pending motion to consolidate this proceeding with adversary number 02-1147 is moot.

Also, because this proceeding will be remanded to state court, the motion to intervene as plaintiff filed by Mr. McGee in the state court proceeding is properly left for the state court to decide.

A separate order in conformity with the foregoing reasons have this day been entered into the record of this proceeding.

**THUS DONE AND SIGNED** in Chambers at Lafayette, Louisiana, on this 3rd day of October, 2005.

_____
Gerald H. Schiff
United States Bankruptcy Judge